UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| THI LY BUI | CIVIL ACTION NO. 3:26-0166 |
| | SECTION P |
| VS. | |
| | JUDGE JERRY EDWARDS, JR. |
| WARDEN RICHWOOD CORRECTIONAL CENTER, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Petitioner Thi Ly Bui,[1] a detainee at Richwood Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 14]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Vietnam. [doc. # 1, p. 10]. She "entered the United States on or about December 18, 2024, without inspection." *Id.* at 11. She was not apprehended "at or near the time or place of entry." [doc. # 1-2, p. 2]. She was taken into immigration custody on December 23, 2024. [doc. # 1, p. 10].

---

[1] Petitioner's "A-Number" is 221-387-502.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner was ordered removed from the United States of America on July 30, 2025. [doc. #s 1, p. 4; 7-4, p. 5].  She appealed the order to the Board of Immigration Appeals ("BIA"). [doc. # 7, p. 3].

Petitioner filed this proceeding on January 15, 2026.  [doc. # 1, p. 8].  She first claims that she is entitled to a bond hearing under "the binding final declaratory judgment in *Maldonado Bautista v. Santacruz*, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025), which applies to all members of the certified Bond Eligible Class . . . ."  *Id.* at 6.  She states that *Bautista* held that "noncitizens who entered without inspection, were not apprehended upon arrival, and are not subject to detention under 8 U.S.C. sections 1226(c), 1225(b)(1), or 1231 are detained under section 1226(a) and entitled to bond hearings."  *Id.* at 9.  She maintains that she qualifies as a member of the class because she is properly classified under 8 U.S.C. § 1226(a); she argues that she is not detained under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, because she does not have a criminal record or conviction.  *Id.* at 6.  She has no pending charges.  [doc. # 7, p. 4].

Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner next claims that there is no likelihood of her removal in the foreseeable future.  [doc. # 1, p. 7].  She writes, "While Vietnam may now be willing to accept Ms. Bui, the government has not shown that her removal is imminent."  *Id.* at 15.

For relief, Petitioner seeks a bond hearing or, alternatively, immediate release from detention.  [doc. # 1, p. 7].

On April 15, 2026, the BIA dismissed Petitioner's appeal.  [doc. # 14, p. 3].

On April 29, 2026, Respondents opposed the petition.  [doc. # 14].  Petitioner filed a reply on May 13, 2026.  [doc. # 16].

## Law and Analysis

### I. Overstay in Detention

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held that if an alien is detained for six months after a final order of removal and if the alien petitioning for habeas corpus "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Petitioner's claim, however, is premature because she has not been detained more than six months following the date her order of removal became final. She was ordered removed from the United States on July 30, 2025. Under 8 U.S.C. § 1101(47)(B), an order of removal "shall become final upon the earlier of--(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."[3]

On April 15, 2026, the BIA dismissed Petitioner's appeal, rendering her order of removal administratively final. [doc. # 14, p. 3]. To date, six months have not elapsed following the BIA's dismissal of Petitioner's appeal. *See Chance v. Napolitano*, 453 F. App'x 535 (5th Cir. 2011) (per curiam) (concluding that the district court did not err in finding that the "challenge to [petitioner's] continued post removal detention was premature" when the petitioner "had not been in post-removal-order detention longer than the presumptively reasonable six-month period" authorized by *Zadvydas*); *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (per

---

[3] *See also Riley v. Bondi*, 606 U.S. 259, 267 (2025).

3

curiam) (finding that a continued detention claim was "premature" because the petitioner "had not yet been in custody longer than the presumptively reasonable six-month post removal order period"), *cert. denied*, 544 U.S. 1066 (2005).

The Court should deny this claim as premature.

## II. Class Action

Petitioner claims that she is entitled to a bond hearing under "the binding final declaratory judgment in *Maldonado Bautista v. Santacruz*, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025), which applies to all members of the certified Bond Eligible Class . . . ."

In *Bautista*, the court found that persons like Petitioner meeting certain identified requirements are "Bond Eligible." However, one district judge in this district previously rejected this conclusion. *See Mendoza v. Rice,* Civil Action No. 1:26-0058 (W.D. La. Jan. 14, 2026) [doc. #6, pp. 10-19] (Doughty, J.). Another district judge likewise opined: "[T]he reasoning undergirding [*Bautista*] was expressly rejected by a panel of the Fifth Circuit. *Compare Buenrostro-Mendez*, 166 F.4th at 502–08 *with Guerrero-Orellana*, No. 1:25-cv-12664-PBS, at ECF No. 112 *and Maldonado Bautista*, No. 5:25-cv-1873-SSS, at ECF No. 116." *Ramirez v. Harper, et al.*, No. CV 26-386 SEC P, 2026 WL 1067923, at *1 (W.D. La. Apr. 20, 2026).

The undersigned agrees with the judges' opinions above. Accordingly, the Court should dismiss this claim.

## III. Due Process

Petitioner claims that "due process requires a prompt individualized hearing at which the Government must justify continued detention based on Ms. Bui's actual circumstances." [doc. # 16, p. 2].

4

Petitioner is not entitled to a bond hearing.  Petitioner has a final order of removal.  When she "became subject to an administratively final removal order," "authority for [her] detention then shifted to 8 U.S.C. Section 1231."  *Vetcher v. Barr*, 809 F. App'x 254, 256 (5th Cir. 2020). Under Section 1231, the Government is authorized to detain "noncitizens who have been ordered removed from the United States."  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). "During the removal period"—i.e., after "an alien is ordered removed"—"detention is mandatory" for ninety days.  *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Following the ninety-day mandatory detention period, "An alien ordered removed who is inadmissible under section 1182 . . . may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).  Here, the Government found that Petitioner was inadmissible under Section 212(a)(7), which is codified under 8 U.S.C. § 1182.  Consequently, Petitioner is an "alien ordered removed who is inadmissible under section 1182" and may, therefore, "be detained beyond the removal period."  Section 1231(a)(6), "does not" require "the Government to offer detained noncitizens bond hearings after six months of detention . . . ."  *Johnson*, 596 U.S. at 575; *see Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) ("§ 1231, unlike § 1226, does not entitle an alien to a bond hearing before an IJ.").

Further, with respect to due process, *Zadvydas* addressed the extent to which due process demands relief in the § 1231(a) setting, concluding that relief is required only when continued detention is unreasonable.  Consequently, the Government has not and is not violating Petitioner's right to due process.  *See Hernandez-Esquivel v. Castro*, 2018 WL 3097029, at *8-9 (W.D. Tex. June 22, 2018); *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020) ("The Supreme Court has had occasion to consider the constitutional implications of indefinite

detention under § 1231(a). . . . [T]he Court offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard we applied in this case.  We see no cause to question the wisdom of that decision."); *Castaneda*, 95 F. 4th at 760 ("[A] § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation.").[4]

The Court should dismiss this claim.

## IV. Procedural Due Process

Petitioner claims that her "prolonged detention without an individualized bond hearing violates procedural due process under *Mathews v. Eldridge*."  [doc. # 16, p. 5].

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*,

---

[4] *See also Linares v. Collins*, 2025 WL 2726549, at *5 (W.D. Tex. Aug. 12, 2025), *report and recommendation adopted,* 2025 WL 2726067 (W.D. Tex. Sept. 24, 2025) ("[T]he Supreme Court [in *Zadvydas*] set out the standard for when detention pursuant to § 1231(a)(6) violates due process: when there is no significant likelihood of removal in the reasonably foreseeable future. Use of this standard is also consistent with the practice of other district courts in the Fifth Circuit.") (citing cases).

700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above weighs slightly in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

That said, Petitioner only lived in the United States for approximately five days (not on parole, bond, or other supervision) before she was detained.  This weighs against Petitioner's asserted liberty interest.  *But see Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not).  Moreover, Petitioner always knew that she was in the United States without permission, which qualifies her asserted liberty interest.[5]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor.  Petitioner does not offer any reason why not providing process to her before she was detained—i.e., before the Government terminated his liberty interest—risked error.  The Government has provided process after detaining her in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal.  [doc. #s 9-1; 9-4; 9-5].  She has received opportunities to be heard on relevant issues such as her identity, whether she is "an alien present in the United States who has not been admitted or paroled,"[6] the country of which she is a citizen, the country or countries which might accept her, when she entered the country, and whether she is entitled to asylum or other protection.

---

[5] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

[6] [doc. # 14-1, p. 4].

Petitioner appears to seek only post-deprivation process in the form of a bond hearing. From what the undersigned can glean, she appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain her under 8 U.S.C. § 1231. Thus, even if a 'neutral decisionmaker' determined that she was not a flight risk or a danger, Respondents would still detain her.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain her and remove her.[7] Relevant issues, for example, include her identity, citizenship, whether she was ever

---

[7] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that she is entitled to release for urgent humanitarian reasons or for significant public benefit. And even if she did, she had the opportunity to present such a contention in her removal proceedings. *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that she is neither a security risk nor a risk of absconding.

admitted or paroled, when she entered this country, and whether she is entitled to protection from removal. And as explained above the Government has already provided process for these issues. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Petitioner does not claim that the Government failed to provide her process before detaining her and terminating her liberty interest. In this respect, and as explained above, the Government has provided her post-deprivation process in the form of notice and opportunities to be heard and to respond. All of this is to say that there is little, if any, risk of error in terminating her liberty without providing her a post-deprivation bond hearing.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities when she arrived in the United States, demonstrating that she is a possible flight risk. Thus, affording her a bond hearing could burden the Government's interest in preventing flight. And out of caution and even assuming Petitioner sought pre-deprivation process, providing it to her and others who entered the United

States without permission—i.e., providing notice of the intent to detain them *before* detaining them—would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process.  The Court should dismiss this claim.

**Recommendation**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Thi Ly Bui's claim under *Zadvydas* be **DENIED AS PREMATURE** and **DISMISSED WITHOUT PREJUDICE** to her right to re-file the claim should her confinement become unconstitutional.

**IT IS FURTHER RECOMMENDED** that Petitioner's remaining claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See***

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 18th day of May, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge